**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**NICOLE DAYES,**

                              **Plaintiff,**

            **v.**

**WATERTOWN CITY SCHOOL**
**DISTRICT et al.,**

                              **Defendants.**

_____

**5:20-cv-964**
**(GLS/ML)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Amdursky, Pelky Law Firm | TIMOTHY J. FENNELL, ESQ. |
| 26 East Oneida Street | |
| Oswego, NY 13126 | |
| **FOR THE DEFENDANTS:** | |
| _Watertown City School District_ | |
| Office of Frank W. Miller | FRANK W. MILLER, ESQ. |
| 6575 Kirkville Road | CHARLES C. SPAGNOLI, ESQ. |
| East Syracuse, NY 13057 | GIANCARLO FACCIPONTE, ESQ. |
| _Patricia Bailey_ | |
| Law Office of Zachary C. Oren, Esq. | ZACHARY C. OREN, ESQ. |
| 401 Rutger Street | |
| Utica, NY 13501 | |
| Ward Arcuri Law Firm | KEVIN J. DWYER, ESQ. |
| 44 Oxford Road | MICHAEL A. ARCURI, ESQ. |
| New Hartford, NY 13413 | |

**WATERTOWN CITY SCHOOL DISTRICT,**

                    **Cross Claimant,**

                    **v.**

**PATRICIA BAILEY,**

                    **Cross Defendant.**

        **5:20-cv-964**
        **(GLS/ML)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE CROSS CLAIMANTS:** | |
| Office of Frank W. Miller | FRANK W. MILLER, ESQ. |
| 6575 Kirkville Road | CHARLES C. SPAGNOLI, ESQ. |
| East Syracuse, NY 13057 | GIANCARLO FACCIPONTE, ESQ. |
| | |
| **FOR THE CROSS DEFENDANT:** | |
| Law Office of Zachary C. Oren, Esq. | ZACHARY C. OREN, ESQ. |
| 401 Rutger Street | |
| Utica, NY 13501 | |
| | |
| Ward Arcuri Law Firm | KEVIN J. DWYER, ESQ. |
| 44 Oxford Road | MICHAEL A. ARCURI, ESQ. |
| New Hartford, NY 13413 | |

2

**PATRICIA BAILEY,**

           **Cross Claimant,**

           **v.**

**WATERTOWN CITY SCHOOL DISTRICT,**

           **Cross Defendant.**

           **5:20-cv-964 (GLS/ML)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE CROSS CLAIMANT:** | |
| Law Office of Zachary C. Oren, Esq. | ZACHARY C. OREN, ESQ. |
| 401 Rutger Street | |
| Utica, NY 13501 | |
| | |
| Ward Arcuri Law Firm | KEVIN J. DWYER, ESQ. |
| 44 Oxford Road | MICHAEL A. ARCURI, ESQ. |
| New Hartford, NY 13413 | |
| | |
| **FOR THE CROSS DEFENDANT:** | |
| Office of Frank W. Miller | FRANK W. MILLER, ESQ. |
| 6575 Kirkville Road | CHARLES C. SPAGNOLI, ESQ. |
| East Syracuse, NY 13057 | GIANCARLO FACCIPONTE, ESQ. |

**PATRICIA BAILEY,**

             **Third-Party Plaintiff,**

          **v.**

**PATRICIA B. LaBARR et al.,**

             **Third-Party Defendants.**

        **5:20-cv-964**
        **(GLS/ML)**

**APPEARANCES:**                       **OF COUNSEL:**

**FOR THE THIRD-PARTY PLAINTIFF:**
Law Office of Zachary C. Oren,      ZACHARY C. OREN, ESQ.
Esq.
401 Rutger Street
Utica, NY 13501


Ward Arcuri Law Firm           KEVIN J. DWYER, ESQ.
44 Oxford Road              MICHAEL A. ARCURI, ESQ.
New Hartford, NY 13413


**FOR THE THIRD-PARTY
DEFENDANTS:**
*Patricia B. LaBarr, Beth Linerman,*
*Maria T. Mesires, Culley Gosier,*
*Jason Harrington, Michael R.*
*Struchen, & Nancy Henry*
Office of Frank W. Miller        CHARLES C. SPAGNOLI, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057


*Utica Mutual Insurance Company,*
*Republic Franklin Insurance*
*Company & Devin Farley*

4

Goldberg Segalla, LLP                    MICHAEL EDWARD LONGO,
711 3rd Avenue                           ESQ.
Suite 1900
New York, NY 10017


**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Nicole Dayes brings this action individually and as parent and
next friend of minor Z.D. against Watertown City School District
(hereinafter "the District") and Patricia Bailey, an employee of the District,
alleging claims pursuant to 42 U.S.C. § 1983, Title VI of the Civil Rights Act
of 1964,[1] and New York State law.  (Compl., Dkt. No. 1.)  The District and
Bailey filed cross claims against one another, and Bailey commenced a
third-party action against Patricia LaBarr, Superintendent of the District,
and the following members of the District's Board of Education: Beth
Linerman, Maria T. Mesires, Cully Gosier, Jason Harrington, Michael R.
Struchen, and Nancy Henry, (hereinafter collectively referred to as "Board
defendants"), as well as Utica Mutual Insurance Company, Republic

---

[1] *See* 42 U.S.C. §§ 2000d-2000d-7.

Franklin Insurance Company, and Devin Farley, a complex liability claims specialist for Utica Mutual, (hereinafter collectively referred to as "insurance defendants").  (Dkt. No. 30.)

Pending are the following motions: Bailey's motion to dismiss the District's cross claims, (Dkt. No. 23), Bailey's partial motion to dismiss Dayes' complaint, (Dkt. No. 25), the District's letter motion requesting that the court strike Bailey's new arguments made in reply in further support of her partial motion to dismiss, (Dkt. No. 41), the District's motion to dismiss Dayes' complaint, (Dkt. No. 43), Board defendant's motion to dismiss Bailey's third-party complaint, (Dkt. No. 60), the District's motion to dismiss Bailey's cross claims, (Dkt. No. 61), insurance defendants' motion to dismiss Bailey's third-party complaint, (Dkt. No. 68), a motion for sanctions against Bailey filed by Board defendants and the District, (Dkt. No. 84), and Bailey's cross motion to amend her third-party complaint, (Dkt. No. 90).

## II.  Background

A.  **Facts**[2]

1.  *Dayes' Complaint*

---

[2] The facts are drawn from Dayes' complaint, (Dkt. No. 1), and Bailey's third-party complaint, (Dkt. No. 30), and presented in the light most favorable to them insofar as their pleadings are concerned.

Dayes is the mother of Z.D, an African-American fourth grade student at North Elementary School in the District during the 2018-19 school year.  (Compl. ¶¶ 1-2, 13-14.)  Bailey is a retired employee of the District who, at all relevant times, was Z.D.'s teacher.  (*Id.* ¶ 13.)

In May 2020, Bailey "conducted a mock slave auction during her class" and "singled out Z.D. and one other African-American student in the class to serve as the 'slaves' for the auction."  (*Id.* ¶¶ 15-16.)  She "instructed the 'slaves' that they were to stand at the front of the class while their classmates yelled out numbers to bid on them," and instructed that, "if this were a real auction, they would be shackled, . . . naked, and . . . their legs would be broken if they tried to escape."  (*Id.* ¶¶ 17-18.)  She also instructed them that, once they were purchased, "they would have to take the last name of their new 'owner' and would have to refer to their owner as master."  (*Id.* ¶ 19.)  Bailey "directed two Caucasian students in the class to participate in the auction" and to bid on and act as "masters" to Z.D and his classmate.  (*Id.* ¶ 20.)

Z.D. followed these instructions "out of fear of getting in trouble."  (*Id.* ¶ 21.)  Afterwards, "Bailey asked Z.D. how he felt and he said he 'didn't want to be black [anymore]' and that he 'felt like being black was a

disgrace.'" (*Id.* ¶ 22.)  "He later asked his parents if he could change his skin color." (*Id.*)  Following the mock slave auction, Z.D. was emotionally distraught. (*Id.* ¶ 23.)  Dayes contacted Principal Sandra Cain the following day. (*Id.* ¶ 24.)  Cain indicated that she was unaware of the mock slave auction. (*Id.* ¶ 25.)  An investigation was commenced following Dayes' call. (*Id.*)

Dayes also "contacted the District Office in an attempt to set up a meeting to discuss these events and was told that there was no one who could meet with her." (*Id.* ¶ 26.)  Three days after the mock slave auction, LaBarr contacted Dayes for more details. (*Id.* ¶ 27.)  However, Dayes did not have any in-person meetings with anyone from the District regarding the incident. (*Id.* ¶ 28.)

"A substitute teacher took over Z.D.'s class for the remainder of the school year." (*Id.* ¶ 29.)  "[N]o formal disciplinary action was ever taken against" Bailey, and she "was allowed to retire." (*Id.* ¶¶ 29, 31.)  The District "has never issued a formal statement regarding the incident and has indicated only that an investigation is ongoing, despite it being over one year since the incident." (*Id.* ¶ 32.)

As a result of the mock slave auction event, Z.D. "sustained

psychological injuries, pain and suffering, mental anguish, and extreme emotional distress."  (*Id.* ¶ 35.)

### 2.    Bailey's Third-Party Complaint

In May 1986, Bailey was granted tenure by the District.  (Dkt. No. 30 ¶ 39.)  When Bailey announced her retirement, the District gave her a "Key To The District."  (*Id.* ¶ 46.)  At a school board meeting in June 2019, LaBarr "read a prepared statement concerning the subject of the May 28, 2019 Fourth Grade Social Studies course on slavery taught by . . . Bailey," wherein LaBarr stated "[t]his was not part of the curriculum."  (*Id.* ¶¶ 49, 54.)

After Dayes commenced her action against Bailey, Bailey made a demand for indemnification and defense from the District, which was denied.  (*Id.* ¶¶ 98-99.)

## B.    Procedural History

Dayes asserts the following causes of action against the District: (1) a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983; (2) a Fourteenth Amendment equal protection claim pursuant to 42 U.S.C. § 1983; (3) an equal protection claim pursuant to Article I, § 11 of the New York State Constitution; (4) a "racial

discrimination/racially hostile educational environment" claim pursuant to Title VI; and (5) negligence.  (Compl. ¶¶ 39-87.)

As against Bailey, Dayes asserts the following causes of action: (1) a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983; (2) a Fourteenth Amendment equal protection claim pursuant to 42 U.S.C. § 1983; (3) an equal protection claim pursuant to Article I, § 11 of the New York State Constitution; and (4) an intentional infliction of emotional distress claim.  (*Id.* ¶¶ 39-63, 76-81.)

The District asserts cross claims against Bailey for contribution and indemnification.  (Dkt. No. 7.)  In turn, Bailey asserts the following cross claims against the District: (1) contribution; (2) common law indemnification; (3) "a common law claim for defense"; (4) indemnification pursuant to New York State Public Officers Law § 18; (5) a claim "for defense" pursuant to New York State Public Officers Law § 18; (6) a claim "for defense" pursuant to New York State Education Law §§ 3028 and 3811; (7) indemnification pursuant to New York State Education Law § 3023; (8) a Fourteenth Amendment "federal *Monell* stigma plus § 1983 claim"; (9) "a state law claim of defamation (slander)"; and (10) "a state law claim of defamation (libel)."  (Dkt. No. 21 ¶¶ 26-101.)

Additionally, Bailey asserts the following claims against LaBarr and the Board defendants: (1) a Fourteenth Amendment "federal stigma plus § 1983 claim"; (2) "a state law claim of defamation (slander)" against LaBarr only; (3) "a state law claim of defamation (libel)"; (4); "a § 1983 supervisory liability *Colon* claim"; (5) a common law indemnification claim against LaBarr only; (6) "a common law claim for defense" against LaBarr only; (7) a claim "for defense" pursuant to New York State Education Law §§ 3028 and 3811; and (8) contribution.  (Dkt. No. 30 ¶¶ 39-105, 137-38.)

Finally, as against the insurance defendants, Bailey asserts the following: (1) "a third party intended beneficiary breach of contract claim for indemnification"; (2) "a third party intended beneficiary breach of contract claim for defense"; and (3) "a claim for bad faith insurance claims processing."  (*Id.* ¶¶ 106-136.)

### III.  <u>Standard of Review</u>

"The standard for granting a Rule 12©) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2nd Cir. 2001) (internal citations omitted).  The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a

full discussion of the governing standard, the court refers the parties to its

prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215,

218 (N.D.N.Y. 2010).

## IV.  Discussion

### A.    The District's Motion

#### 1.    *Substantive Due Process*[3]

The District seeks dismissal of Dayes' substantive due process

claim, arguing that its alleged conduct is not extreme and outrageous, and

Bailey does not allege that any policymaker of the District committed any

intentional act against Z.D., or that the District "encouraged Bailey's

conduct, sanctioned it, or provided specific opportunity for Bailey to commit

the conduct in question."  (Dkt. No. 43, Attach. 1 at 7-9.)  Rather, according

to the District, the allegations are only those of "generalized claims of

negligence against the District in the training and supervision of Bailey,"

---

[3]  At the outset, the District argues that Baily's substantive due process and equal protection claims must be dismissed because there is no *Monell* liability.  (Dkt. No. 43, Attach. 1 at 4-7.)  Specifically, the District contends that the complaint does not identify any formal policy of the District, or any decision of its policymakers, that resulted in the alleged constitutional violations by Bailey.  (*Id.*)  In response, Dayes contends that she has established *Monell* liability because she "has alleged personal involvement of the District in failing to adequately respond to the conduct of . . . Bailey," and she "has alleged a plausible claim for liability against the District for failure to train and supervise . . . Bailey."  (Dkt. No. 44 at 2-7.) As explained herein, because the complaint fails to state a claim pursuant to § 1983, the court need not reach this issue.

which is insufficient to establish a substantive due process claim.  (*Id.* at

9.)  In response, Dayes contends that she need not plead intentional

conduct by the District, and that determining whether the conduct here is

extreme and outrageous enough is inappropriate at this stage because it

"requires a weighing of potential evidence and choice between two

different plausible options, which is the not the Court's task on a motion to

dismiss."  (Dkt. No. 44 at 7-10.)

"[T]he substantive due process guarantee of the Fourteenth

Amendment protects individuals from 'conscience-shocking' exercises of

power by government actors."  *Johnson v. Newburgh Enlarged Sch. Dist.*,

239 F.3d 246, 252 (2d Cir. 2001) (citations omitted).  "To establish a

violation of substantive due process rights, a plaintiff must demonstrate

that the state action was 'so egregious, so outrageous, that it may fairly be

said to shock the contemporary conscience.'"  *Okin v. Vill. of*

*Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)

(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998))

(other citation omitted).

"The protections of substantive due process are available only

against egregious conduct which goes beyond merely offend[ing] some

13

fastidious squeamishness or private sentimentalism and can fairly be

viewed as so brutal and offensive to human dignity as to shock the

conscience."  *Smith v. Half Hollow Hills Cent. Sch. Dist*., 298 F.3d 168, 173

(2d Cir. 2002) (internal quotation marks and citations omitted).

"Importantly, however, the amorphous nature of the protections afforded by

substantive due process also implicates a particular need to preserve the

constitutional proportions of constitutional claims, lest the Constitution be

demoted to . . . a font of tort law."  *B.A. on behalf of M.G., Jr. v. City of*

*Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 522-23 (N.D.N.Y. 2016)

(internal quotation marks and citations omitted).  The Second Circuit has

instructed that, "[i]n situations in which time for deliberation is available to

the official, [courts] apply a 'deliberate indifference' standard, which

requires demonstration of a 'willful disregard' of the 'obvious risks,' 'serious

implications,' and 'likelihood' of harm."  *Spring v. Allegany-Limestone Cent.*

*Sch. Dist*., 655 F. App'x 25, 28 (2d Cir. 2016) (quoting *Okin*, 577 F.3d at

432).

In support of her substantive due process claim against the District,

Dayes asserts the following: the District "was grossly negligent in providing

no or inadequate training to . . . Bailey regarding racial discrimination,

14

racial harassment, and racially hostile educational environments in the classroom"; the District's "polices and customs . . . allowed for . . . Bailey to design and implement racially discriminatory and hostile lesson plans and curriculum without adequate oversight"; the District's "failure . . . to provide adequate supervision and training exhibited deliberate indifference to the rights of Z.D."; the District "failed to adequately address the conduct of . . . Bailey, resulting in little to no follow up with [Dayes] following the incident, no issuance of a formal statement denouncing . . . Bailey's conduct, and no adequate disciplinary action against Bailey," and such response was "clearly unreasonable in light of the known circumstances and further reflects [the District's] deliberate indifference to the rights of Z.D." (Compl. ¶¶ 47-51.)

These allegations do not plausibly allege that the District acted in a manner that is arbitrary, conscience-shocking, or oppressive to make out a valid substantive due process claim. Indeed, "[t]he threshold for establishing a constitutional tort in a school environment is high." *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 538 (E.D.N.Y. 2012) (holding that a security guard who punched and yelled racial epithets at plaintiffs while trying to break up a fight between students

did not violate substantive due process); *compare Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (holding that allegations of a teacher hitting a student for breaking an egg in class was insufficient to raise a substantive due process claim), *with Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 249, 252-253 (2d Cir. 2001) (finding a gym teacher's conduct did violate due process when he grabbed and lifted a student by the neck and shouted "I'll kick the shit out of you!," then slammed the student's head against the bleachers and metal fuse box and punched him in the face); *see Perrin v. Canandaigua City Sch. Dist.*, No. 08-cv-6135L, 2008 WL 5054241, at *4 (W.D.N.Y. Nov. 21, 2008) (holding that allegations of a gym teacher pulling a student's arms behind his back, forcing the student through a door into the locker room, and punching and poking the student in the chest while berating him with use of foul, profane, and demeaning language was insufficient to raise a substantive due process claim); *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 297 (E.D.N.Y. 2004) (holding that allegations of racist statements made by school staff to a student was insufficient to raise a substantive due process claim).

Here, Dayes does not allege conscience-shocking behavior by the

16

District.  Rather, such allegations pertain only to Bailey's actions, (Compl.

¶ 44), and "there is no special rule for supervisory liability[;] a plaintiff must

plead and prove 'that each Government-official defendant, through the

official's own individual actions, has violated the Constitution.'"  *Tangreti v.*

*Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 676 (2009)).  Here, there are no allegations that establish a

plausible inference of conscience-shocking conduct by the District.  *See*

*Musco Propane, LLP v. Town of Wolcott*, No. 3:10-cv-1400, 2011 WL

3267756, at *5 (D.Conn. July 28, 2011) ("In determining whether a plaintiff

has stated a claim for violation of federal substantive due process, the

court is mindful that the Fourteenth Amendment is not a 'font of tort law.'"

(quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)).

Dayes' contention that determining whether the conduct here is

extreme and outrageous enough is inappropriate at this stage because it

"requires a weighing of potential evidence and choice between two

different plausible options, which is the not the Court's task on a motion to

dismiss," (Dkt. No. 44 at 7-10), is a misstatement of the law.  *See Drain v.*

*Freeport Union Free Sch. Dist.*, No. CV 14-1959, 2015 WL 1014413, at *13

(E.D.N.Y. Jan. 14, 2015), *report and recommendation adopted in part,*

17

*rejected in part*, No. 14-CV-1959, 2015 WL 1014451 (E.D.N.Y. Mar. 9, 2015) (recommending a partial grant of a school district's motion to dismiss, and finding that, "notwithstanding the physical and emotional pain sustained by [the student] and her parents, the allegations raised in the Complaint cannot plausibly be characterized as "conscience shocking," as a matter of law"); *S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672, 2012 WL 2940020, at *8 (S.D.N.Y. July 18, 2012) (granting school district's motion to dismiss, and holding that the plaintiff's allegations that the measures taken by the district "failed to stop the bullying may give rise to a state[]law negligence claim . . . but not to a substantive due process violation"); *Musco Propane, LLP v. Town of Wolcott*, No. 10-CV-1400, 2011 WL 3267756, at *5 (D.Conn. July 28, 2011) (granting the defendant's motion to dismiss, finding that "[t]he allegations of the Amended Complaint do not support a plausible claim of outrageously arbitrary conduct or a gross abuse of authority").

Accordingly, the District's motion to dismiss Dayes' substantive due process claim is granted, and the claim is dismissed as against it.[4]

---

[4] The court also notes that, where, as here, a substantive due process claim is predicated on the same factual allegations as a separate claim based on another source of constitutional protection, such as the Equal Protection Clause, the substantive due process

2.    *Equal Protection*[5]

The District argues that Dayes' equal protection claim should be dismissed because there is no alleged intentional discrimination by a District actor that constituted discrimination or harassment based on race. (Dkt. No. 43, Attach. 1 at 10-11.)  In response, Dayes contends that the District's reasoning for dismissal fails because, rather than a showing of intentional discrimination, "deliberate indifference can be sufficient to establish an Equal Protection violation when alleged discrimination or harassment has been reported, but the supervisory response was clearly unreasonable in light of the known circumstances."  (Dkt. No. 44 at 10-11 (internal quotation marks and citations omitted).)

────────────────────

claim must be dismissed.  *See, e.g.*, *Hu v. City of N.Y.*, 927 F.3d 81, 104 (2d Cir. 2019) (affirming dismissal of a substantive due process claim because it "rest[ed] on the same set of factual allegations" as plaintiff's Equal Protection claim and therefore "must be analyzed under the Equal Protection Clause"); *Rother v. N.Y. State Dep't. of Corr. and Cmty. Supervision*, No. 12-CV-0397, 2013 WL 4774484, at * 14 (N.D.N.Y. Sept. 4, 2013) ("[T]he harm and conduct challenged by the substantive-due-process . . . and equal-protection claims significantly overlap.  Because the claim for substantive due process is subsumed by Plaintiff's other constitutional claims, it must be dismissed." (citation omitted)).  However, this argument was raised by the District for the first time on reply, (Dkt. No. 57 at 7 n. 44), and, thus, is not considered by the court.  *See Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016), aff'd, 707 F. App'x 724 (2d Cir. 2017) ("It is well-established that arguments may not be made for the first time in a reply brief." (internal quotation marks and citation omitted)).

    [5]  Dayes does not oppose dismissal of her state law equal protection claim.  (Dkt. No. 44.)  In any event, because "there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983," *Krug v. Cty. of Rennselaer*, 559 F. Supp. 2d 223, 248 (N.D.N.Y. 2008) (citations omitted), Dayes' New York state law equal protection claim must be dismissed.

"The Equal Protection Clause prohibits government officials from intentionally discriminating against individuals based on their race, ethnicity, gender or national origin." *Poole v. Hawkins*, No. 18-CV-443, 2021 WL 695119, at *8 (E.D.N.Y. Feb. 23, 2021) (citing *Ross v. New Canaan Env't Comm'n*, 532 F. App'x 12, 13 (2d Cir. 2013)) (other citation omitted).  "To hold an individual defendant liable under § 1983, the plaintiff must show that the defendant was personally involved in the challenged conduct." *Rys v. Grimm*, No. 6:19-CV-1251, 2021 WL 827671, at *8 (N.D.N.Y. Mar. 4, 2021) (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003)).

"The Second Circuit recently held that after *Iqbal*, there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and "the violation must be established against the supervisory official directly." *Id.* (internal quotation marks and citations omitted).  "Direct participation requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Id.* (internal quotation marks and citation omitted).

20

Here, there are no allegations of the District's direct participation in the alleged mock slave auction conducted by Bailey, which is the basis of Dayes' equal protection claim.  (Compl. ¶¶ 57-61.)  Indeed, as to the alleged mock slave auction, there are no facts plausibly establishing that the District was personally involved in administering this lesson, nonetheless in a discriminatory manner, and there are no facts plausibly establishing that the District treated Z.D. differently compared with others similarly situated.  (*See generally id.*)  To be sure, the only allegation in support of Dayes' equal protection claim against the District is that "the actions and inactions of the . . . District reflect gross negligence in the supervision and training of their teachers and a policy or custom under which unconstitutional practices are allowed."  (*Id.* ¶ 62.)  Such allegations are entirely conclusory and insufficient to state a viable equal protection claim against the District.  *See Steele v. New York*, 5:20-CV-00220, 2021 WL 1110769, at *11 (N.D.N.Y. Mar. 23, 2021).

Accordingly, the District's motion to dismiss Dayes' equal protection claim is granted, and the claim is dismissed as against it.

3.    *Title VI*

The District argues that Dayes' Title VI claim should be dismissed

because she cannot show that the allegedly discriminatory conduct was "pervasive and objectionably offensive," because it was one instance; the District did not know, before or during, that Bailey was going to perform the mock slave auction; and, when notified by Dayes of Bailey's conduct, the District did not act with deliberate indifference to the conduct.  (Dkt. No. 43, Attach. 1 at 11-15.)  In response, Dayes contends that the District "had actual knowledge of the incident after [Dayes'] call to the princip[al] the next day and [Dayes] was contacted by the District Office three days after the incident, clearly indicating actual knowledge"; the alleged conduct here, although one instance, "was outrageous" and "a reasonable inference can be drawn that . . . this single incident was severe enough to create a hostile educational environment"; "the lack of any disciplinary action against the District, despite [Bailey's] concededly highly inappropriate and outrageous conduct was unreasonable in light of the circumstances"; failing to meet with Dayes face-to-face was unreasonable; and "taking over one year to investigate the incident was . . . lengthy and [an] unjustifiable delay."  (Dkt. No. 44 at 11-18 (internal quotation marks omitted).)

"Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin."  *Zeno v. Pine Plains Cent. Sch.*

*Dist.*, 702 F.3d 655, 664 (2d Cir. 2012) (citing 42 U.S.C. § 2000d).  "[I]n the educational setting, a school district [may be] liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student."  *Id.* at 665 (citations omitted).  However, "[l]iability only arises if a plaintiff establishes: (1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference."  *Id.* (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 653-50 (1999)) (other citation omitted).  "A school district will be subject to liability for third-party conduct only if it exercises substantial control over both the harasser and the context in which the known harassment occurs," and "a school district . . . exercises substantial control over the circumstances of the harassment when it occurs 'during school hours and on school grounds.'"  *Id.* (quoting *Davis*, 526 U.S. at 644-46) (some internal quotation marks omitted).

   "Even assuming the requisite level of control, not all harassment is actionable.  The harassment must be 'severe, pervasive, and objectively offensive' and discriminatory in effect."  *Id.* (quoting *Davis*, 526 U.S. at 650-51) (other citation omitted).  Discriminatory actions covered under Title VI include those that "restrict an individual in any way in the enjoyment of

any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the school system," and "[e]ducational benefits include an academic environment free from racial hostility." *Id.* at 665-66 (internal quotation marks, alteration, and citations omitted). Further, "a school district must know of the harassment. Constructive knowledge is not enough; only actual knowledge is a predicate to liability." *Id.* at 666 (citations omitted).

Lastly, "only deliberate indifference to [student-on-student] harassment can be viewed as discrimination by school officials themselves." *Id.* (citation omitted). "The school's action—or inaction—must, 'at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it." *Id.* (internal quotation marks and citation omitted). "A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment." *Id.* (citation omitted). "A failure to respond, a response that only follows after a lengthy and unjustified delay, and a response that amount[s] to deliberate indifference to discrimination, have all been found inadequate." *Id.* (internal quotation marks and citations omitted). A school district will only be found deliberately indifferent if its actions were clearly unreasonable

under the circumstances, but "when weighing the adequacy of a response, a court must accord sufficient deference to the decisions of school disciplinarians."  *Id.* at 666 (citations omitted).

Dayes alleges the following in support of her Title VI claim against the District: the District's "grossly inadequate supervision over . . . Bailey and her classroom curriculum and [its] failure to adequately train her and her fellow teachers on proper and improper teaching methods, racial discrimination and harassment, and racially hostile educational environments demonstrated deliberate indifference to the rights of Z.D. and his fellow classmates," and the District's "minimal response, investigation, and discipline imposed on . . . Bailey . . . despite its actual notice of the events that took place, was wholly inadequate and clearly unreasonable in light of the severity of . . . Bailey's action."  (Compl. ¶¶ 73-74.)

These allegations do not establish a plausible inference that the District had actual notice of the alleged mock slave auction.  Similarly, the allegations arising from the District's response once it was made aware of the mock slave auction do not establish that the District acted with deliberate indifference, or that any of its actions were driven by Dayes' and Z.D.'s race, or that such actions were so severe, pervasive, and objectively

offensive that it deprived Z.D. of access to the educational benefits or opportunities provided by the school.  *See I.S. ex rel. Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 609 (N.D.N.Y. 2020) ("In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." (citations omitted)).

Accordingly, the District's motion to dismiss Dayes' Title VI claim is granted, and the claim is dismissed as against it.

    *4.    Negligence*

The District argues that Dayes' negligence claim must also be dismissed, arguing that it owed no duty to Z.D. "regarding the type and kind of lessons [he was] provided in an educational setting"; Dayes has not alleged that the District "knew or should have known of Bailey's propensity to commit racial discrimination, or that Bailey had a propensity to commit racial discrimination at all"; and there are no allegations "which specifically indicate why or how [Dayes] believe[d] that Bailey was improperly trained by the District on issues of race in the classroom."  (Dkt. No. 43, Attach. 1 at 15-17 (emphasis omitted).)  In response, Dayes contends that she has

"plausibly alleged the inadequate training of . . . Bailey resulted in her decision to hold a mock slave auction in her classroom and single out Z.D. for participation."  (Dkt. No. 44 at 18-19.)

In order to allege a claim for negligence, plaintiffs must assert that defendants "owed plaintiff[s] a cognizable duty of care, that the defendant[s] breached that duty, and that the plaintiff[s] [were] injured as a proximate result of the breach."  *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (citing *Donohue v. Copiague Union Free Sch. Dist.*, 64 A.D.2d 29, 32 (2d Dep't 1978)) (other citations omitted).

Dayes' allegations in support of her negligence claim against the District include the following: the District had "a duty to adequately train, supervise, manage, and/or control [its] employees"; it "breached this duty by failing to provide adequate supervision and management over . . . Bailey in the development and implementation of her curriculum"; it "failed to adequately train . . . Bailey and the teachers in the school and district as to proper and improper lessons and racial discrimination, harassment, and racially hostile educational environments"; and its breach "resulted in [Bailey's] ability to include and conduct a mock slave auction in her fourth grade curriculum."  (Compl. ¶¶ 83-86.)  Such vague and

27

conclusory allegations do not support a negligence claim against the District. *See Scaggs v. N.Y. Dep't of Educ.*, No. 06 CV 0799, 2007 WL 1456221, at *22 (E.D.N.Y. May 16, 2007) ("In light of the cases in this State indicating that courts should not adjudicate over broad negligence claims such as that brought by plaintiffs [for common law negligence for failure to train, supervise, manage and/or control the school's employees], defendants' motion to dismiss plaintiffs' claim of negligent failure to train, supervise, manage or control is granted.").

Accordingly, the District's motion to dismiss Dayes' negligence claim is granted, and the claim is dismissed as against it.[6]

## B.   **Bailey's Motion for Partial Judgment on the Pleadings**[7]

### 1.   *Substantive Due Process*

Bailey argues that Dayes' substantive due process claim should be dismissed because Dayes has alleged a more specific right by bringing an equal protection claim.  (Dkt. No. 25, Attach. 1 at 4-5.)  Thus, she contends, because the claims arise out of the same alleged conduct, the

---

[6]  Because all claims asserted by Dayes against the District are dismissed, Bailey's motion to dismiss the District's cross claims, (Dkt. No. 23), and the District's letter motion requesting to strike new arguments in Bailey's reply, (Dkt. No. 41), are denied as moot.

[7]  Bailey does not seek dismissal of Dayes' equal protection claim.  (Dkt. No. 25.)

substantive due process claim should be dismissed.  (*Id.*)  In response, Dayes maintains that, with respect to her substantive due process claim, she has alleged "a right to be free from racial discrimination and harassment in school," whereas with her equal protection claim, she has "alleged a right to be free from selective treatment based on race," and each claim will require different proof.  (Dkt. No. 29 at 2-3.)

"[T]he Supreme Court [has] narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution," and, thus, "it is now well established that, where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."  *Hu*, 927 F.3d at 103 (internal quotation marks, alteration, and citations omitted).

Dayes alleges the following in support of her substantive due process claim as against Bailey: Bailey's conduct "in singling out two African-American children in her class to serve as 'slaves' in a mock slave auction and in directing two Caucasian children to place bids to 'purchase' these 'slaves' and act as their 'masters,' is so egregious, so outrageous, as to

29

fairly be said to shock the contemporary conscious, particularly in light of the very young age of Z.D. and his fellow fourth grade classmates"; and Bailey's chosen means as to how to "teach about the issue of slavery in the United States was clearly extreme and disproportionate to any pedagogical purpose and reflects racial malice, callousness, and deliberate indifference to the rights of Z.D."  (Compl. ¶¶ 44-45.)

Dayes asserts very similar factual allegations in support of her equal protection claim: "Z.D., compared to other students similarly situated, was selectively chosen by . . . Bailey to serve as a 'slave' in her mock auction based on his race"; and "Bailey acted with racially discriminatory intent in choosing Z.D. and his classmate to serve as 'slaves' in this mock auction because they are African-American and in choosing two Caucasian students to serve as 'masters.'"  (*Id.* ¶¶ 57-58.)

It is clear from the face of the complaint that Dayes' substantive due process and equal protection claims rest on the same set of factual allegations—namely, that Bailey selectively chose Z.D. as a "slave" for her mock slave auction based on his race.  Thus, Dayes' substantive due process allegations are subsumed by the more particular allegations of equal protection violations.  *See Hu*, 927 F.3d at 104; *Velez v. Levy*, 401

30

F.3d 75, 94 (2d Cir. 2005) (holding that the plaintiff's substantive due

process claim was subsumed by the alleged First Amendment and equal

protection violations); *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335,

1351 n.8 (2d Cir. 1994) (dismissing a plaintiff's substantive due process

claim because it was duplicative of the plaintiff's equal protection claim).

Accordingly, Bailey's motion to dismiss Dayes' substantive due

process claim is granted, and the claim is dismissed as against her.

*2.    Intentional Infliction of Emotional Distress*

Bailey argues that Dayes' intentional infliction of emotional distress

claim should be dismissed because it is also duplicative of Dayes' equal

protection claim.  (Dkt. No. 25, Attach. 1 at 5-8.)  In response, Dayes

contends that the case law relied upon by Bailey does not support her

argument; the claims have different elements and require different proof;

and Bailey has failed to argue that there is no plausible claim for emotional

distress.  (Dkt. No. 29 at 4-6.)

To prevail on an intentional infliction of emotional distress claim, "a

plaintiff must establish that there was 'extreme and outrageous conduct,'

that the conduct was undertaken with 'intent to cause, or disregard of a

substantial probability of causing, severe emotional distress,' and that the

conduct did in fact cause severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014) (quoting *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).  Such a claim is a "highly disfavored [tort] under New York law," *id.* at 158 (citation omitted), and "may be invoked only as a last resort . . . to provide relief in those circumstances where traditional theories of recovery do not."  *Salmon v. Blesser*, 802 F.3d 249, 256-57 (2d Cir. 2015) ("[B]ecause other tort remedies were available [plaintiff,] the district court correctly dismissed his intentional infliction claim." (internal quotation marks and citations omitted)).

Emotional distress claims are often dismissed where the conduct complained of falls within the ambit of some other tort liability.  *See Moore v. City of New York*, 219 F. Supp. 2d 335, 340 (E.D.N.Y. 2002) ("[N]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." (citation omitted)); *Thomas v. County of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003) ("[S]ince the conduct complained of is encompassed in plaintiff's claim[ ] for malicious prosecution . . . plaintiff's claim for intentional infliction of emotional distress must be dismissed." (citation

omitted)); *Elleby v. City of New York*, No. 15-cv-109, 2016 WL 4367962, at *4 (S.D.N.Y. Aug. 11, 2016) ("Because the allegations undergirding this claim [for intentional infliction of emotional distress] are the same as those supporting [plaintiff's] false arrest and Fourth Amendment claims, his claim for intentional infliction of emotional distress must be dismissed.").

Dayes asserts the following facts in support of her emotional distress claim: Bailey "singl[ed] out Z.D. and one other African-American fourth grade student to serve as 'slaves' in her mock slave auction and direct[ed] and encourag[ed] two Caucasian students to 'bid' on them and act as their 'masters,'" and such conduct "is so outrageous in character and so extreme in danger as to go beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized society"; and that, "Bailey intentionally singled out Z.D. based upon his race and the slave auction she held in her class," which "was done with disregard of the substantial probability of causing severe emotional distress to the two, young African-American children that she made to act as 'slaves' before a classroom of their peers."  (Compl. ¶¶ 78-79.)

As similarly explained above, the emotional distress claim and the equal protection claim rest on the same set of factual allegations —

33

namely, that Bailey selectively chose Z.D. as a "slave" for her mock slave auction based on his race.  Thus, although Dayes contends that the emotional distress claim "requires proof of intent to cause severe emotional distress or disregard of the probability of causing such distress," and the equal protection claim requires state action as well as "proof [of] intent to discriminate or deliberate indifference," and "proof of selective treatment based on race," (Dkt. No. 29 at 5), it is clear from the face of the complaint that the allegations undergirding her emotional distress claim are the same as those supporting her equal protection claim.

Accordingly, Bailey's motion to dismiss Dayes' intentional infliction of emotional distress claim is granted, and the claim is dismissed as against her.

## C.   Motion to Dismiss Bailey's Third-Party Complaint Filed by LaBarr and Board Defendants

### 1.   Stigma-Plus

LaBarr and Board defendants seek dismissal of Bailey's stigma-plus claim, arguing that she has not asserted any cognizable property deprivation coupled with a stigmatizing statement; because Bailey had already retired at the time of the allegedly defamatory statements, she no

longer has a property interest in her job; neither LaBarr nor any member of the Board made a statement which could be considered stigmatizing towards Bailey; Bailey was not mentioned by name, nor identified in any of LaBarr's statements; none of LaBarr's words to the Board had any bearing on Bailey's professional capabilities as a teacher in general, nor did they "imply that Bailey was a racist or bigot"; and, even if LaBarr's statement that Bailey's lesson was not part of the curriculum was incorrect, "such a statement would not be stigmatizing, as nothing that an unnamed fourth grade social studies teacher taught a lesson that was not part of the curriculum does not impugn Bailey's good name, honor, or integrity in any way."  (Dkt. No. 60, Attach. 5 at 5-7.)

In response, Bailey contends that the stigmatizing statements were those made by LaBarr during a board meeting regarding the mock slave auction; the "plus" is the affect that the alleged stigmatizing statements had on her "status as key holder of the District," and "the stigmatizing statement, albeit it [sic] incorrectly, gave the appearance to the media and the public that it affected Bailey's constitutionally protected employment interest."  (Dkt. No. 70, Attach. 4 at 2-11.)

Defamation is an issue of state, not federal, law "and therefore

provides an insufficient basis to maintain a § 1983 action." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation omitted).  Under limited circumstances, however, a plaintiff may seek relief under the so-called "stigma plus" doctrine.  *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013).  "Specifically, an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest."  *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation marks and citations omitted).

A successful claim requires the plaintiff to prove: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Sadallah*, 383 F.3d at 38 (internal quotation marks and citation omitted).  The "'plus' prong under this doctrine" is satisfied by "the deprivation of a plaintiff's property" or some other tangible interest.  *Id.* (citation omitted).

"Stigmatizing statements" are those statements that "call into question [the] plaintiff's good name, reputation, honor, or integrity" or "denigrate the employee's competence as a professional and impugn the

employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (internal quotation marks and citation omitted).  The statement "must be sufficiently public to create or threaten a stigma." *Velez*, 401 F.3d at 87 (citation omitted).  And the plaintiff must show that "the stigmatizing statements were made in the course of, or in close temporal proximity to, a discharge or significant demotion." *Donley v. Village of Yorkville*, No. 6:14-CV-1324, 2019 WL 3817054, at *8 (N.D.N.Y. Aug. 13, 2019) (citation omitted).

Bailey's allegations fail to raise a plausible inference that LaBarr's statements were stigmatizing to Bailey.  Indeed, Bailey was not mentioned by name nor identified in the statement, and LaBarr's statement that the lesson "was not part of the curriculum" does not have any bearing on Bailey's professional capabilities.  *See Piccoli v. Yonkers Bd. of Educ.*, No. 08-CV-8344, 2009 WL 4794130, at *3 (S.D.N.Y. Dec. 11, 2009) ("[M]erely conclusory allegations that Plaintiff was stigmatized, that her reputation was substantially damaged and that she lost professional standing are insufficient without factual support to allege a plausible stigma-plus claim,

especially where it is not even clear whether the public or prospective employers knew or could know that Plaintiff was the subject of the alleged statements." (citation omitted)).

Nor does Bailey offer support for her contention that the media coverage mentioned her name.  (Dkt. No. 70, Attach. 4 at 9-10.)  Indeed, the media coverage attached to her complaint does not reference her by name, (Dkt. No. 30, Attach. 3), and her argument that the court "can use its common sense and draw all inferences in Bailey's favor to reach the obvious conclusion that the stigmatizing statement was in regard[]s to Bailey's lesson," (Dkt. No. 70, Attach. 4 at 9-10), is unavailing, as it rests entirely on speculation.

Further, Bailey's contention that she has adequately pleaded the "plus" of her claim "because the stigmatizing statements by the School Board and Superintendent affected Bailey's status as key holder of the District," and "they unquestionably adversely affected her use and enjoyment of such status which was given to her for her impeccable career with the School District,"  (Dkt. No. 70, Attach. 4 at 3), is vague and conclusory.  Indeed, there are no allegations that she was deprived of her "key holder" designation by the District, nor are there any allegations

explaining how her status as "key holder" was affected.

To the extent she alleges that she has a "constitutionally protected property interest in her job and job reputation," (Dkt. No. 30 ¶ 48), there are no allegations that she was terminated or forced to retire.  Indeed, she concedes that she herself decided to retire, while arguing that "the fact that *[she] decided to retire* does not mean that LaBarr was entitled to sully Bailey's perfect teaching record, as Bailey still has a reputation to defend." (Dkt. No. 70, Attach. 4 at 14 (emphasis added).)  In any event, such argument is unavailing because, as noted above, there is no "plus" emanating from this alleged "stigma."

Accordingly, LaBarr's and Board defendants' motion to dismiss Bailey's stigma-plus claim is granted, and the claim is dismissed as against them.

## 2.    *Defamation Claims*

LaBarr and Board defendants seek dismissal of Bailey's defamation claims, arguing that she did not mention these claims in her notice of claim, and, in any event, she fails to adequately plead such a claim.  (Dkt. No. 60, Attach. 5 at 8-12.)  In response, Bailey contends that she was not required to file a notice of claim with the District "due to the procedural posture of

these third party claims"; she does not need to show special damages;

LaBarr's statements "dealt directly with Bailey's professional reputation as

a teacher"; and she asks the court "to draw the reasonable inference that

the defamatory statement was about her" because "it is entirely reasonable

for the [c]ourt to draw the inference that Bailey was the subject teacher

referenced in the defamatory statement."  (Dkt. No. 70, Attach. 4 at 11-17.)

Bailey's argument that the notice of claim requirement does not apply

to third-party complaints constitutes a misstatement of the law  *See New

York v. Brocco*, 309 A.D.2d 1107, 1108 (3d Dep't 2003) (dismissing certain

tort claims in a third-party complaint for failure to file the requisite notice of

claim, explaining that, claims against a school district sounding in tort

require a notice of claim to be filed within ninety days after the accrual of

the claim and must be commenced within a year and ninety days of

accrual).

Here, Bailey did not file a notice of claim for her defamation claims,

(Dkt. No. 60, Attach. 3), and she admits as much in her briefing, explaining:

"Although not required to, Bailey did out of an abundance of caution file a

notice of claim for defense and indemnification."  (Dkt. No. 70, Attach. 4 at

12 n.8.)

Accordingly LaBarr's and Board defendants' motion to dismiss Bailey's defamation claims is granted, and the claims are dismissed as against them.

### 3.   *Supervisory Liability*

LaBarr and Board defendants seek dismissal of Bailey's § 1983 supervisory liability claim, arguing that she has not alleged any predicate violation of her constitutional rights, and, thus, she has no standing to assert such a claim.  (Dkt. No. 60, Attach. 5 at 13.)  In response, Bailey contends that "it was the School Board's and Labarr's deficient supervision which resulted in an alleged infraction of . . . Z.D.'s rights"; she "was following the course and curriculum provided by the School Board and Labarr which Bailey had been given no training on"; and, therefore, the District and LaBarr "should be required to pay for any alleged damages . . . Z.D.[] sustained as a result of the deficient supervision through no fault of Bailey."  (Dkt. No. 70, Attach. 4 at 17-18.)

For supervisory liability, there is no "special test," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020) (citation omitted).

41

It is unclear on what basis Bailey is pursuing her supervisory liability claim.  To the extent that Bailey alleges that it was the Board's and LaBarr's "deficient supervision which resulted in an alleged infraction of . . . Z.D.'s rights," (Dkt. No. 70, Attach. 4 at 17), such allegations do not establish a viable supervisory liability claim because it asserts a claim on behalf of Z.D., and Bailey lacks standing to do so.  *See Crawford v. Cuomo*, No. 9:13-CV-406, 2014 WL 897046, at *5 (N.D.N.Y. Mar. 6, 2014), *rev'd on other grounds by* 796 F.3d 252 (2d Cir. 2015), ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (citations omitted)).

Accordingly, LaBarr's and Board defendants' motion to dismiss Bailey's § 1983 supervisory liability claim is granted, and the claim is dismissed as against them.

*4.     Indemnification and Contribution Claims*

LaBarr and Board defendants argue that Bailey's claims for

42

contribution and indemnification fail because neither are available for Bailey's § 1983 claims, and she is being sued as the principal wrongdoer. (Dkt. No. 60, Attach. 5 at 13-14, 18-19.)  In response, Bailey states she is only seeking contribution as an alternative "so in the event that liability on whatever theories is apportioned, [she] is covered by having alleged such a right," and that, as to her conduct, it is possible that a jury may find that her conduct was "passive."  (Dkt. No. 69, Attach. 4 at 3-5.)

Bailey does not have a claim for indemnification or contribution for defendants' potential liability under Section 1983, because no such claim is available for Section 1983 actions.  *See Wyatt v. City of Lackawanna*, No. 1:17-cv-446, 2021 WL 848932, at *2 (W.D.N.Y. Mar. 5, 2021) ("[C]ourts in this Circuit have widely held that there is no right to indemnification or contribution under Section 1983." (citations omitted)); *Moroughan v. Cty. of Suffolk*, 514 F. Supp. 3d 479 (E.D.N.Y. 2021) ("To the extent these cross-claims seek indemnification and contribution on plaintiff's § 1983 claims, they cannot do so as a matter of law.  No right to contribution exists under § 1983." (citation omitted)).  Because the only claim remaining against Bailey is a Section 1983 equal protection claim, any claim for indemnification or contribution is unavailable.

Accordingly, LaBarr's and Board defendants' motion to dismiss Bailey's claims for indemnification and contribution is granted, and the claims are dismissed as against them.

### 5.   *Common Law Claim for Defense Against LaBarr Only*

LaBarr seeks dismissal of Bailey's "common law claim for defense," arguing that such claim "is frivolous and has no foundation under the law." (Dkt. No. 60, Attach. 5 at 14.)  In response, Bailey maintains that "a prima facie tort provides" a basis for a defense at common law.  (Dkt. No. 69, Attach. 4 at 5-8.)

It is unclear on what grounds Bailey is bringing her "claim for defense."  Nonetheless, as limited by her response, Bailey premises such claim on a prima facie tort, (*id.*), which is simply not alleged in the complaint.  To the extent she seeks leave to amend to plead this claim in the alternative, her proposed alterations—just like her original complaint—do not include any reference to a prima facie tort, and, thus, such request is denied as futile.  *See Baldwin v. United States*, No. 1:20-cv-214, 2021 WL 431145, at *4 (N.D.N.Y. Feb. 8, 2021) ("A proposed amendment is considered futile if it 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

44

Procedure.'" (quoting *Panther Partners Inc. v. Ikanos Comms, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Accordingly, LaBarr's motion to dismiss Bailey's claim for defense is granted, and the claim is dismissed as against her.

*6.    Education Law §§ 3028 & 3811*

LaBarr and Board defendants seek dismissal of Bailey's claims under Education Law §§ 3028 and 3811 for the following reasons: such provisions apply only to school district entities, not superintendents or individual board members; as to Bailey's claim pursuant to § 3028, it does not apply because the underlying claims against Bailey do not arise out of student discipline; and, as to her claim pursuant to § 3811, such claim fails because there has been no certification of good faith by the Commissioner of Education, and Bailey was acting outside the scope of her employment. (Dkt. No. 60, Attach. 5 at 15-17.)

In response, Bailey contends that, as to the argument that § 3028 does not apply because the matter must arise out of student discipline, she "does not know what arguments [Dayes] will prosecute, nor what a jury will conclude in this matter," and, thus, it is premature to dismiss this claim. (Dkt. No. 69, Attach. 4 at 12.)  As to her § 3811 claim, she argues that she

has "sufficiently factually established that she was acting in good faith as she was just following the material the School District had provided her with"; "her acts w[]ere foreseeable by the School District as she was teaching slavery and the slave trade as instructed and with material from the School District"; she "has plead she was not acting intentionally"; and she "was acting in good faith when performing her official duties and thus is entitled to defense and indemnification" under § 3811.  (*Id.* at 13-14.)

Education Law § 3028 applies only to "action[s] or proceeding[s] arising out of disciplinary action taken against any pupil of the district while in the discharge of his duties within the scope of his employment or authorized volunteer duties."  N.Y. Educ. Law § 3028.  Here, because there are no allegations by Dayes concerning "disciplinary action taken" against Z.D. by Bailey, § 3028 does not apply.

Generally, Education Law § 3811 provides for the defense and indemnification of employees by certain public entities in certain actions or proceedings.  *See* N.Y. Educ. Law § 3811.  Section 3811(1) requires that school districts defend teachers in civil actions arising out of the exercise of their duties and indemnify them from any resulting damages.  *See In re Matyas v. Bd. of Educ., Chenango Forks Cent. Sch. Dist.*, 63 A.D.3d 1273,

1274 (3d Dep't 2009).  A school district's duty to indemnify is conditioned upon the teacher obtaining certification that he or she "acted in good faith with respect to the exercise of his powers or the performance of his duties under this chapter."  N.Y. Educ. Law § 3811(1)©).  Whether the alleged conduct on which the underlying action is based comes within the provisions of § 3811(1) as having been within the discharge of petitioner's professional duties as an employee of the District is for the District to decide in the first instance, and its determination may be set aside only if it lacks a factual basis and, therefore, is arbitrary and capricious.  *See Matyas*, 63 A.D.3d at 1274.

Here, Bailey alleges that she "demanded indemnification and defense from [the District]," and "LaBarr wrongfully denied indemnification and defense to [her] for this action."  (Dkt. No. 30 ¶¶ 98-99.)  A decision by LaBarr will be reversed only by a finding that such decision was arbitrary and capricious.  *See Matyas*, 63 A.D.3d at 1274.  Bailey's cross claims are devoid of any allegations that LaBarr's decision to deny her indemnification was arbitrary and capricious, and, thus, Bailey's claim pursuant to § 3811 must be dismissed.

Accordingly, LaBarr and Board defendants' motion to dismiss

47

Bailey's claims under Education Law §§ 3028 and 3811 is granted, and the claims are dismissed as against them.[8]

**D.    The District's Motion to Dismiss Bailey's Cross Claims**

*1.    Indemnification & Contribution*

The District seeks dismissal of Bailey's claims for indemnification and contribution, arguing that such claims fail because they are unavailable for Dayes' Section 1983 claim asserted against Bailey, and she is alleged to be the principal wrongdoer.  (Dkt. No. 61, Attach. 5 at 5-7.)

For the same reasons explained above, *see supra* Part IV.C.4, because the only claim remaining against Bailey is a Section 1983 equal protection claim, any claim for indemnification or contribution for the District's potential liability under Section 1983 is unavailable.

Accordingly, the District's motion to dismiss Bailey's claims for indemnification and contribution is granted, and the claims are dismissed as against it.

*2.    Common Law Claim for Defense*

_____

[8] LaBarr and Board defendants also argue that § 3028 and § 3811 provisions apply only to school district entities, not superintendents or individual board members, and that, as to Bailey's claim pursuant to § 3811, such claim fails because Bailey was acting outside the scope of her employment.  (Dkt. No. 60, Attach. 5 at 15-17.)  Although these arguments may have merit, for the reasons explained herein, the court need not reach these bases for dismissal.

The District seeks dismissal of Bailey's common law claim for defense, arguing that such a claim does not exist under New York law. (Dkt. No. 61, Attach. 5 at 7.)

For the same reasons explained above, *see supra* Part IV.C.5, because it is unclear on what grounds Bailey is bringing her claim for defense, and, as limited by her response that such claim is premised on a prima facie tort, (Dkt. No. 69, Attach. 4 at 5), and such a claim is not alleged in the complaint, Bailey has failed to adequately allege a claim for defense costs.

Accordingly, the District's motion to dismiss Bailey's claim for defense costs is granted, and the claim is dismissed as against it.

### 3.   *Public Officers Law § 18*

The District argues that Bailey's claim pursuant to Public Officers Law § 18 fails because the statute requires the District to have formally adopted the statute before it can apply, and the District has not done so. (Dkt. No. 61, Attach. 5 at 7-9.)  In response, Bailey contends that the affidavit submitted by the District for its assertion that it has not formally adopted the statute is not within the scope of review at this stage, and that she was acting within the scope of her employment and, thus, is entitled to

defense and indemnification pursuant to the statute.  (Dkt. No. 69, Attach. 4 at 8-12.)

Public Officers Law § 18 provides for the defense and indemnification of employees "in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties."  N.Y. Pub. Off. Law § 18(3)(a).  Section 18 applies only to those municipalities "whose governing body has agreed by the adoption of local law, by-law, resolution, rule or regulation (i) to confer the benefits of this section upon its employees, and (ii) to be held liable for the costs incurred under these provisions."  *Id.* § 18(2)(a); *see Hennessy v. Robinson*, 985 F. Supp. 283, 287 (N.D.N.Y. 1997) ("[I]n order to adopt § 18 and confer benefits upon employees, a local enactment must make specific and formal reference to § 18.").

Bailey fails to plead either specifically that the District has adopted Public Officers Law § 18 or generally that all conditions precedent have occurred with respect to this cross claim, which requires dismissal.  *See* Fed. R. Civ. P. 9©); *LeChase Constr. Servs., LLC v. Escobar Constr.*, No. 318CV1021, 2019 WL 2743637, at *8 (N.D.N.Y. July 1, 2019) (explaining

50

that failing to allege the occurrence of a condition precedent in at least general terms will result in dismissal).  To the extent Bailey seeks to amend her cross claims to include the following: "Upon information and belief [the District] has purchased insurance for the defense and indemnification of . . . Bailey," (Dkt. No. 69, Attach. 2 ¶ 43), such amendment is futile.  Indeed, that allegation does not raise a plausible inference that the District adopted the statute.

Accordingly, the District's motion to dismiss Bailey's cross claim pursuant to Public Officer's Law § 18 is granted, and the claim is dismissed as against it.

### 4.    *Education Law §§ 3028 & 3811*

The District seeks dismissal of Bailey's claims pursuant to Education Law §§ 3028 and 3811, arguing that such claims fail because § 3028 is inapplicable, as it applies only to suits arising out of matters of student discipline, and § 3811 is inapplicable because Bailey was not certified to have been acting in good faith and she was not acting within the scope of her employment.  (Dkt. No. 61, Attach. 5 at 9-12.)

For the same reasons explained above, *see supra* Part IV.C.6, Bailey's claims pursuant to Education Law §§ 3028 and 3811 must be

dismissed.  Indeed, Bailey alleges that she "demanded indemnification and defense from [the District]," and the District "wrongfully denied indemnification and defense to [her] for this action."  (Dkt. No. 21 ¶¶ 36-37.)  Because a decision by the District will be reversed only on a finding that such decision was arbitrary and capricious, *see Matyas*, 63 A.D.3d at 1274, and because Bailey's cross claims are devoid of any allegations that the District's decision to deny her indemnification was arbitrary and capricious, her claim pursuant to § 3811 must be dismissed.

Accordingly, the District's motion to dismiss Bailey's cross claims pursuant to Education Law §§ 3028 and 3811 is granted, and the claims are dismissed as against it.

### 5.    *Education Law § 3023*

The District argues that Education Law § 3023 provides for indemnification and defense of teachers and other employees only where a claim or suit involves bodily injury or damage to property, and because there is no allegation by Dayes against Bailey for bodily injury or damage to property, it has no application here.  (Dkt. No. 61, Attach. 5 at 12-13.)  In response, Bailey contends that she has pleaded that her actions were not intentional, and thus, § 3023 "is squarely in play," and that she is "alleging

claims for compensatory damages which would get captured" by the definition of "personal injury." (Dkt. No. 69, Attach. 4 at 19.)

Education Law § 3023 provides coverage for teachers "arising out of any claim, demand, suit or judgment by reason of alleged negligence or other act resulting in accidental bodily injury to any person, or accidental damage to the property of any person within or without the school building." N.Y. Educ. Law § 3023. Here, there is no allegation by Dayes against Bailey for accidental bodily injury or damage to property. (*See generally* Compl.)

Accordingly, the District's motion to dismiss Bailey's cross claim pursuant to Education Law § 3023 is granted, and the claim is dismissed as against it.

### 6. Stigma-Plus

The District seeks dismissal of Bailey's stigma-plus claim, arguing that such claim fails because she has failed to allege that she suffered a loss of a tangible property interest, or that she was the subject of a stigmatizing statement made by LaBarr. (Dkt. No. 61, Attach. 5 at 13-16.) In response, Bailey contends, as discussed above, that the stigmatizing statements were those made by LaBarr during a board meeting regarding

the mock slave auction; the "plus" is the affect that the alleged stigmatizing statements had on her "status as key holder of the District," and "the stigmatizing statement, albeit it [sic] incorrectly, gave the appearance to the media and the public that it affected Bailey's constitutionally protected employment interest."  (Dkt. No. 70, Attach. 4 at 2-11.)

For the same reasons explained above, *see supra* Part IV.C.1, because Bailey has failed to sufficiently allege a "plus" emanating from a "stigma," the District's motion to dismiss Bailey's stigma-plus cross claim is granted, and the claim is dismissed as against it.

7.   *Defamation*

The District seeks dismissal of Bailey's defamation claim, arguing that such claim fails because she failed to present it in her notice of claim; she does not allege per se defamation or special damages; and she does not allege a defamatory statement.  (Dkt. No. 61, Attach. 5 at 16-20.)  In response, Bailey contends that she was not required to file a notice of claim with the District "due to the procedural posture of these third party claims"; she does not need to show special damages; LaBarr's statements "dealt directly with Bailey's professional reputation as a teacher"; and she asks the court "to draw the reasonable inference that the defamatory

54

statement was about her" because "it is entirely reasonable for the [c]ourt to draw the inference that Bailey was the subject teacher referenced in the defamatory statement."  (Dkt. No. 70, Attach. 4 at 11-17.)

As explained above, *see supra* Part IV.C.2, because Bailey did not include this claim in her notice of claim, the District's motion to dismiss Bailey's defamation cross claims is granted, and the claims are dismissed as against it.

## E.    Insurance Defendants' Motion to Dismiss Bailey's Third-Party Complaint

Insurance defendants seek dismissal of Bailey's claims against them, (Dkt. No. 68, Attach. 4), and, in opposition, Bailey seeks leave to amend her third-party complaint, (Dkt. No. 90).

The insurance defendants filed a letter explaining that they "do not generally oppose" the cross motion to file an amended complaint, but they do oppose the requested relief that they answer the amended complaint, and that a Rule 16 conference be held.  (Dkt. No. 94.)  Thus, the parties have stipulated that insurance defendants do not oppose to the cross motion, and, should the cross motion be granted, they will be afforded twenty days to respond to the amended complaint on any grounds,

whether or not previously raised.  (Dkt. No. 90, Attach. 1.)

Because leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2),[9] and because insurance defendants do not oppose the motion, Bailey's cross motion to amend her complaint is granted.  Any filing of an amended pleading by Bailey should be done in accordance with this Memorandum-Decision and Order.

## F.   **Motion for Sanctions Against Bailey Filed by LaBarr, Board Defendants, and the District**

LaBarr, Board defendants, and the District move for sanctions against Bailey, arguing that, of Bailey's combined total of twenty cross claims and third-party claims, "fully thirteen were not merely meritless but in direct disregard of the most basic requirements of the claims," and, thus, Bailey should be sanctioned for forcing them "to respond to these frivolous claims."  (Dkt. No. 84, Attach. 3.)

Under Fed. R. Civ. P. 11(b)(2),

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

---

[9] Bailey correctly notes that no scheduling order has been entered, and her cross motion is governed by Rule 15(a)(2).  (Dkt. No. 90, Attach. 4 at 5.)

> circumstances . . . the claims . . . and other legal
> contentions are warranted by existing law or by a
> nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law.

A court has authority to sanction a party under Rule 11©) if it determines

that the party has made false, misleading, improper, or frivolous

representations to the court in violation of Rule 11(b).  *See Williamson v.*

*Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).  "A claim is legally

frivolous for Rule 11 purposes if, under a standard of objective

reasonableness, it is clear that there is no chance of success and no

reasonable argument to extend, modify, or reverse the law as it stands."

*Friedman v. Self Help Cmty. Servs.*, No. 11-CV-3210, 2015 WL 1246538,

at *23 (E.D.N.Y. Mar. 17, 2015) (citation omitted).

LaBarr, Board defendants, and the District argue the following:

Bailey's claim pursuant to Education Law §§ 3028, 3811, and 3023, as well

as the claim pursuant to Public Officers Law § 18 are frivolous, because

under the clear terms of the statutes, none of them apply, and/or express

elements of the claim are not satisfied; there is no common law claim for

defense under New York law; her claims for indemnification are

inapplicable to the causes of action asserted by Dayes against Bailey; her

supervisory liability claim is inapposite and frivolous, and she failed to

defend it as a distinct claim on the merits; and she did not allege a "plus" in

her stigma-plus claim.  (Dkt. No. 84, Attach. 3 at 3-17.)

The central goal of Rule 11 sanctions is to deter baseless filings.

*See Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994).  LaBarr, Board

defendants, and the District have moved for sanctions based on thirteen of

twenty total claims brought by Bailey, and, thus, the filings of these third-

party defendants would be made even if the allegedly frivolous claims were

excised.  For this reason, in addition to the other circumstances of this

case and the nature of the arguments presented, the court magnanimously

exercises its discretion and denies the motion for sanctions.

Accordingly, the motion for sanctions against Bailey filed by LaBarr,

Board defendants, and the District is denied.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the District's motion to dismiss Dayes' complaint

(Dkt. No. 43) is **GRANTED**; and it is further

**ORDERED** that the Clerk terminate the District from this action; and

it is further

**ORDERED** that Bailey's motion to dismiss the District's cross claims (Dkt. No. 23) is **DENIED as moot**; and it is further

**ORDERED** that the District's letter motion requesting to strike new arguments in Bailey's reply (Dkt. No. 41) is **DENIED as moot**; and it is further

**ORDERED** that Bailey's partial motion to dismiss Dayes' complaint (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED** that Dayes' sole remaining claim is a § 1983 equal protection claim against Bailey; and it is further

**ORDERED** that the motion to dismiss Bailey's third-party complaint filed by LaBarr and Board defendants (Dkt. No. 60) is **GRANTED**; and it is further

**ORDERED** that the District's motion to dismiss Bailey's cross claims (Dkt. No. 61) is **GRANTED**; and it is further

**ORDERED** that the Clerk terminate the following defendants from the third-party action: the District, Patricia LaBarr, Beth Linerman, Maria T. Mesires, Cully Gosier, Jason Harrington, Michael R. Struchen, Nancy Henry; and it is further

**ORDERED** that the motion to dismiss Bailey's third-party complaint filed by insurance defendants (Dkt. No. 68) is **DENIED as moot**; and it is further

**ORDERED** that the motion for sanctions against Bailey filed by Gosier, Harrington, Henry, LaBarr, Linerman, Mesires, Struchen, and the District (Dkt. No. 84) is **DENIED**; and it is further

**ORDERED** that Bailey's cross motion to amend her third-party complaint (Dkt. No. 90) is **GRANTED**; and it is further

**ORDERED** that Bailey shall file her amended third-party complaint within seven (7) days of this Memorandum-Decision and Order; and it is further

**ORDERED** that insurance defendants shall respond to the amended third-party complaint within twenty (20) days of its filing; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 27, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge

60